**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------------------X

SYNEA HICKS,

Civil Action No.:

              Plaintiff,

       -against-                                 **COMPLAINT**

CITY OF JERSEY CITY, JERSEY CITY
POLICE DEPARTMENT, PAUL TAMBURELLI,
and DAVID MCNEESE,

              Defendants.

-----------------------------------------------------------------X

       Plaintiff Synea Hicks ("HICKS" or "Plaintiff") alleges against Defendants City of Jersey

City (JERSEY CITY), Jersey City Police Department ("JERSEY CITY POLICE"), Paul

Tamburelli ("TAMBURELLI") and David McNeese ("MCNEESE") (collectively,

"Defendants"), upon information and belief, as follows:

**NATURE OF THE CLAIMS**

    1.   Plaintiff brings this action against her employer, Defendant JERSEY CITY, Defendant

        JERSEY CITY POLICE and individual Defendants, TAMBURELLI and MCNEESE, for

        sex/gender discrimination, a hostile work environment, and retaliation pursuant to Title

        VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII") and the

        New Jersey Law Against Discrimination, N.J.S.A §§ 10:5-1 *et seq.* ("LAD").  Plaintiff's

        claims arise from the discrimination and hostile work environment Defendants subjected

        her to while at work due to her race, sex/gender as well as her status as a nursing mother,

as well as from the retaliation Plaintiff faced as a result of her complaints of Defendants' discrimination.

2. Federal and state anti-discrimination and anti-retaliation laws are intended to afford every employee the same rights, regardless of gender, and provide all employees with the dignity and respect they deserve in the workplace. Sex/gender discrimination is prohibited by Title VII and the LAD, and employees complaining of sex/gender discrimination are similarly protected by the anti-retaliation provisions of Title VII and the LAD. As such, this is an action for declaratory, injunctive and monetary relief to redress Defendants' unlawful employment practices, committed against Plaintiff.

3. More specifically, in this action for monetary damages, Defendants violated Plaintiffs' rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 *et seq*., as amended by, *inter alia*, the Pregnancy Discrimination Act of 1978 (42 U.S.C. §2000e(k)) by unlawfully discriminating against and fostering a hostile work environment against the Plaintiff on the basis of her sex and her status as a nursing mother. Furthermore, Defendants retaliated against the Plaintiff for complaining about said discrimination, in violation of §704(a) of the Civil Rights Act of 1964, as amended.

4. Additionally, Defendants violated Plaintiff's rights under the Section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. §207, as amended by, *inter alia*, the Patient Protection and Affordable Care Act (42 U.S.C. §18001 *et seq.*)) by failing to provide a safe, clean, and private location where Plaintiff was able to express breast milk and by failing to compensate Plaintiff for her breaks to express breast milk in the same manner that other employees are compensated for break time. Defendants further retaliated against the Plaintiff for

complaining of said unlawful practices, in violation of the anti-retaliation provisions of the FLSA codified in 29 U.S.C. §215.

## JURISDICTION AND VENUE

5. The causes of action which form the basis of this matter arise under the Title VII and the LAD.

6. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII pursuant to 28 U.S.C. § 1331 and 1343.

7. This Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the causes of actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 *et seq.*, as amended by, *inter alia*, the Pregnancy Discrimination Act of 1978 (42 U.S.C. §2000e(k))) and Section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. §207, as amended by, *inter alia*, the Patient Protection and Affordable Care Act (42 U.S.C. §18001 *et seq.*)) and supplemental jurisdiction over the New Jersey State law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district and as the Defendants regularly

conduct business in this district, the Defendants are subject to personal jurisdiction in this district.

10. On March 1, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 520-2022-03958.

11. On June 7, 2022, the EEOC issued Plaintiff a Notice of Right to Sue with respect to the aforementioned Charge of Discrimination.

12. Plaintiff has exhausted her administrative remedies and files this Complaint within 90 days of the EEOC's issuance of her Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

**PARTIES**

13. At all times relevant herein, Plaintiff HICKS was and is a resident of Hudson County, New Jersey.

14. Plaintiff HICKS was and is an African American woman.

15. While employed by Defendants, HICKS became pregnant and subsequently gave birth.

16. After giving birth, while employed by Defendants, HICKS became and continued to be a nursing mother.

17. As a nursing mother, while employed by Defendants, HICKS has a biological need to express breast milk.

18. At all times relevant herein, Defendant JERSEY CITY POLICE was and is municipal agency operating under the municipality of the City of Jersey City, organized and existing by virtue of the laws of the state of New Jersey.

19. At all times relevant herein, Defendant JERSEY CITY POLICE is and was, at all times in

4

the relevant time period, a division and/or department of the City of Jersey City entrusted with, among other things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the City of Jersey City.

20. That at all times hereinafter mentioned, Defendant JERSEY CITY POLICE maintains offices located at 75 Bishop Street, Jersey City, New Jersey 07304.

21. At all times relevant herein, Defendant JERSEY CITY was and is a unit of local government authorized under Title 40A of the New Jersey Statutes to conduct business on behalf of the municipality throughout the State of New Jersey.

22. At all times relevant herein, Defendant JERSEY CITY's owned, operated, managed, maintained, and controlled a City of Jersey City Department of Public Safety located at 75 Bishop Street, Jersey City, New Jersey 07304 (the "JCDPS").

23. At all times relevant herein, Defendant JERSEY CITY is a municipal corporation and a public employer of the individual Defendants.

24. That at all times hereinafter mentioned, Defendant JERSEY CITY maintains offices located at 280 Grove Street, Jersey City, New Jersey 07302.

25. At all times relevant herein, Defendant JERSEY CITY POLICE's owned, operated, managed, maintained, and controlled a City of Jersey City Department of Public Safety located at 75 Bishop Street, Jersey City, New Jersey 07304 (the "JCDPS").

26. At all times relevant herein, Defendant JERSEY CITY POLICE was and is engaged in interstate commerce for the purposes of Title VII and all other relevant statutes.

27. At all times relevant herein, Defendant JERSEY CITY POLICE employs more than 50

employees.

28. At all times relevant herein, Defendant JERSEY CITY POLICE's gross annual revenue exceeds $500,000.

29. At all times relevant herein, Defendant JERSEY CITY was and is engaged in interstate commerce for the purposes of Title VII and all other relevant statutes.

30. At all times relevant herein, Defendant JERSEY CITY employ more than 50 employees.

31. At all times relevant herein, Defendant JERSEY CITY's gross annual revenue exceeds $500,000.

32. At all times relevant herein, HICKS worked and continues to work as a Public Safety Telecommunicator Police Dispatch ("PST") for Defendant JERSEY CITY POLICE and Defendant JERSEY CITY at the City of Jersey City Department of Public Safety.

33. At all times relevant herein, in her capacity as a PST, Plaintiff HICKS was and is an employee of Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's under all applicable statutes.

34. At all times relevant herein, Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's was and is an employer of Plaintiff HICKS under all applicable statutes.

35. At all times relevant herein, Defendant MCNEESE was and is an employee of Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's under all applicable statutes.

36. At all times relevant herein, Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's was and is an employer of Defendant MCNEESE under all applicable statutes.

37. At all times relevant herein, Defendant MCNEESE's was and is an employer of Plaintiff HICKS under all applicable statutes.

38. At all times relevant herein, Defendant MCNEESE was and is employed by Defendant JERSEY CITY and Defendant JERSEY CITY POLICE as the Assistant Director of the City of Jersey City Department of Public Safety.

39. In his capacity as Assistant Director of City of Jersey City Department of Public Safety, Defendant MCNEESE was and is an employee and agent of Defendant JERSEY CITY and Defendant JERSEY CITY POLICE.

40. At all times relevant herein, Defendant MCNEESE was HICKS's supervisor, and in that role, he had the authority to discipline and fire HICKS, direct her work activities, assign her job responsibilities, monitor her performance, conduct performance evaluations, modify her work schedule, alter work hours, and otherwise control the nature and conditions of her employment with Defendant JERSEY CITY and Defendant JERSEY CITY POLICE.

41. At all times relevant herein, Defendant TAMBURELLI was and is an employee of Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's under all applicable statutes.

42. At all times relevant herein, Defendant JERSEY CITY and Defendant JERSEY CITY POLICE's was and is an employer of Defendant TAMBURELLI under all applicable statutes.

43. At all times relevant herein, Defendant TAMBURELLI's was and is an employer of Plaintiff HICKS under all applicable statutes.

44. At all times relevant herein, Defendant TAMBURELLI was and is employed by Defendant JERSEY CITY and Defendant JERSEY CITY POLICE as the Chief of Communications of the City of Jersey City Department of Public Safety.

45. In his capacity as Chief of Communications of the City of Jersey City Department of Public Safety Defendant TAMBURELLI was and is an employee and agent of Defendant JERSEY CITY and Defendant JERSEY CITY POLICE.

46. At all times relevant herein, Defendant TAMBURELLI was HICKS's supervisor, and in that role, he had the authority to discipline and fire HICKS, direct her work activities, assign her job responsibilities, monitor her performance, conduct performance evaluations, modify her work schedule, alter work hours, and otherwise control the nature and conditions of her employment with Defendant JERSEY CITY and Defendant JERSEY CITY POLICE.

**FACTS**

47. On or about August 28, 2017, HICKS commenced employment as a PST with Defendant JERSEY CITY and Defendant JERSEY CITY POLICE in Jersey City, NJ.

48.  For the duration of her employment with Defendant JERSEY CITY and Defendant JERSEY CITY POLICE, HICKS worked at the of City of Jersey City Department of Public Safety facility located at 75 Bishop Street, Jersey City, New Jersey 07304.

49. Plaintiff is an hourly employee and earns approximately $20.00 per hour.

50. Throughout Plaintiff's employment, she reported to and was a subordinate relationship with Defendant MCNEESE, the Assistant Director, Defendant TAMBURELLI, the Chief

of Communications, Kimberly Killroy, the Supervisor, and Amanda Blue, the acting

Supervisor.

51. Throughout her employment with Defendants, Plaintiff has been a stellar employee and

satisfactorily performs her duties and responsibilities.

52. Throughout her employment with Defendants, Plaintiff has worked a full-time schedule

at 40 hours per week, five days a week from 7 am until 3 pm on a rotating schedule;

working five days on and having two days off.

53. In or around December 2019, Plaintiff became pregnant.

54. Shortly after finding out this exciting news, Plaintiff disclosed her pregnancy to her

supervisor at the time and eventually spoke with Defendant MCNEESE and Khadijah

(last name currently unknown), the HR Family Leave Supervisor, about the details of her

imminent maternity leave as well as when she would return from it.

55. Plaintiff continued to work diligently throughout her pregnancy until June 2020, when

complications developed and was placed on bedrest by her doctor.

56. On or around July 22, 2020, Plaintiff gave birth and took maternity leave until December

15, 2020.

57. Plaintiff's daughter and son were born approximately four weeks premature; they spent

several weeks in the Neonatal Intensive Care Unit (NICU).

58. Plaintiff began breast feeding immediately and continued to do so through the present.

59. Plaintiff was able to continue to regularly breastfeed by adhering to a pumping schedule

where she expresses milk throughout the day via multiple pumping breaks.

60. Specifically, Plaintiff would pump every three hours, eight times a day.

61. Prior to her return to work, Plaintiff spoke to Defendant MCNEESE and requested a reasonable accommodation regarding expression of her breast milk.

62. At all times relevant herein, under Plaintiff's employment with Defendants, PSTs are entitled to a paid hour meal break.

63. At all times relevant herein, PSTs do not take meal breaks at the same time and said meal breaks occur throughout the day on a rotating schedule; the first meal break occurs from 9:30 am until 10:30 am, the second meal break occurs from 10:30 am until 11:30 am, the third meal break occurs from 11:30 am until 12:30 pm, the fourth meal break occurs from 12:30 pm until 1:30 pm, and the last meal break occurs from 1:30 pm until 2:30 pm.

64. As such, Plaintiff requested during her shift she would be allowed to take an extra break to express her milk and that she be provided with a private, clean, and safe space to express to do so.

65. Despite her outstanding work performance and having requested and been granted an accommodation for pumping, Plaintiff very quickly became the target of unlawful discrimination by Defendants because of her race, gender, and status as a breast-feeding mother.

66. Plaintiff was frequently forced to take her pumping break under unacceptable conditions.

67. Frequently, there would be no dispatchers willing or able to cover Plaintiff during her pumping break and she was forced to pump while at her desk, in front of co-workers, both male and female.

68. Even on days where Plaintiff was able to take her pumping breaks away from her workstation, the designated lactation room (the women's locker room) did not give her an appropriate level of privacy.

69. Plaintiff attempted to use the room as a private place to express breast milk, but it was devoid of privacy.

70. On more than one occasion, when Plaintiff attempted to use the women's locker room, she had to plead with the current occupants of the locker room to leave and she was often met with resistance.

71. Furthermore, none of Plaintiff's coworkers were reminded of her pumping breaks and as a result, she was often walked in on while pumping and indisposed.

72. On several occasions, employees would enter the locker room to use the cots and other amenities so Plaintiff would have to pump in their presence.

73. No signage was placed on the door to the locker room alerting people to Plaintiff's pumping breaks.

74. As a result, Plaintiff was forced to express her milk with a lack of privacy and respect.

75. Although Plaintiff complained to Defendant MCNEESE about the lack of privacy, she was usually ignored.

76. In addition to lacking adequate privacy, the women's locker room was extremely unsanitary, uncomfortable, and not conducive to expressing.

77. Additionally, the women's locker room was used regularly for shower purposes.

78. The room smelled strongly of mold and/or mildew and left Plaintiff fearful that she was breathing in toxic spores.

79. Furthermore, the ceiling of the locker room experienced leaks, which contributed to the moldy smell and unsanitary conditions.

80. On or around January 28, 2022, while Plaintiff was on a pumping break, the ceiling of the locker room collapsed leaving water, mold and debris all over the room.

81. Plaintiff immediately called HR and Defendant MCNEESE to complain about these hazardous and unsanitary conditions.

82. Plaintiff asked Defendant MCNEESE if she could temporarily use a conference room to pump but her request was denied.

83. Plaintiff disposed of the milk she pumped that day in fear of it being exposed to mold spores.

84. Although Plaintiff asked to be provided with an alternative area to express her milk, she was not given one and had to call out the following day due to this situation.

85. The conditions surrounding Plaintiff's pumping breaks worsened after a disagreement she had with a coworker and the Director of Communications, Defendant TAMBURELLI.

86. On or around September 16, 2021, while Plaintiff was on a break, it came to her attention that the  coworker covering her channel, Rose Davis, was not dispatching the calls going through Plaintiff's channel (protocol violation).

87. When Plaintiff questioned Rose Davis whether she was deliberately holding the calls (which is against protocol), Rose Davis responded defensively and said "don't tell me how to do my job."

88. Plaintiff became frustrated from this exchange and reported it privately via email to her supervisor, Kimberly Kilroy.

89. Later that day, Plaintiff overheard Davis yelling about the situation to Defendant TAMBURELLI in his office.

**90.** Defendant TAMBURELLI thereafter responded to Plaintiff complaint via email and reprimanded Plaintiff for reporting Davis and CCed Davis on the email, the very person Plaintiff was making a complaint about.

**91.** Plaintiff replied to Defendant TAMBURELLI and reiterated that she felt that Davis was intentionally trying to sabotage her channel while she covered for Plaintiff and inquired for a solution.

**92.** Defendant TAMBURELLI took no action and neglected to respond.

93. On or around September 20, 2021, Plaintiff spoke with Defendant TAMBURELLI in his office about her concerns and recorded the conversation so she would have proof of her verbal complaint.

94. Defendant TAMBURELLI told Plaintiff he felt Davis' actions were appropriate and that Davis approached him before Plaintiff did about the situation.

95. Furthermore, Defendant TAMBURELLI ensured he would investigate the situation and get back to Plaintiff.

96. After not hearing back from Defendant TAMBURELLI for a week, Plaintiff approached him again in his office to continue the conversation regarding her concerns.

97. Defendant MCNEESE was present for this second conversation in Defendant TAMBURELLI's office.

98. Plaintiff inquired about what the next steps were regarding the investigation and Defendant TAMBURELLI restated that he felt Davis was not in the wrong and that he never mentioned further looking into the situation.

99. Plaintiff told Defendant TAMBURELLI that he was mistaken, and she has proof of the conversation because she recorded it.

100. Defendant TAMBURELLI became upset after Plaintiff told him that she recorded the conversation and started to yell at Plaintiff extensively.

101. Defendant TAMBURELLI jumped out of his chair and lunged towards Plaintiff in an extremely aggressive manner.

102. Defendant TAMBURELLI was attempting to intimidate Plaintiff by inserting himself in her personal space and yelling.

103. Furthermore, Defendant TAMBURELLI threatened disciplinary action unless Plaintiff deleted the recording.

104. Plaintiff jumped back and became visibly upset by Defendant TAMBURELLI's aggression.

105. Defendant MCNEESE interfered in the exchange and said to Defendant TAMBURELLI, "you need to stop because she is probably recording now."

106. Defendant TAMBURELLI proceeded to ask Plaintiff to submit an email report as to why Plaintiff was recording the conversation and further stated it was a violation of the city policy and procedure.

107. Plaintiff explained in an email to Robert Baker (Senior Communications Director), Defendants MCNEESE, and Julio Cordero, that the reason she recorded the

conversations is because Plaintiff wanted to avoid attempts for others to change the story of what Plaintiff was reporting since the conflict with Ms. Davis and Defendant TAMBURELLI was a "she said-she said situation".

108. On or around the following day, September 21, 2021, via email, Defendant TAMBURELLI defended his position that Ms. Davis was not at fault for her actions and included an "addendum" to the employee policy stating that employees are not allowed to record conversations between themselves and other employees while at work.

109. Furthermore, Defendant TAMBURELLI claimed that his anti-recording provision was disseminated to Plaintiff years prior, though Plaintiff has no record or recollection of receiving it.

110. Plaintiff found no record of said provision in her employee handbook online or on city desktops.

111. Defendant TAMBURELLI states that Plaintiff was in violation of the policy when she records the conversation with him and continued to threaten Plaintiff with disciplinary action.

112. On or around September 22, 2021, Plaintiff submitted an Employee Relationship Complaint Form to HR regarding the disagreement with Ms. Davis and subsequently with Defendant TAMBURELLI.

113. Plaintiff described how Defendant TAMBURELLI not only had incorrectly displayed favoritism towards Ms. Davis, but inappropriately CCed her on Plaintiff's complaint and proceeded to angrily threaten Plaintiff with disciplinary action for recording the complaint to him.

114. In addition, Plaintiff stated that she felt Defendant TAMBURELLI made up the anti-recording to intimidate Plaintiff and that his behavior was harassment.

115. Plaintiff requested a department change due to Defendant TAMBURELLI's threatening behavior and requested proof of the policy that stated employees were not allowed to record conversations.

116. Crystal Fonseca, the liaison from HR, told Plaintiff that an addendum detailing that policy had been sent out to all employees in 2018 via email.

117. Plaintiff searched by email but found no such evidence of the email.

118. On or around October 7, 2021, Plaintiff received an email from Crystal C. Fonseca from HR regarding the September complaint and was assured that Plaintiff's complaint was reviewed confidentially, and the matter was being investigated thoroughly.

119. On or around October 16, 2021, via email Plaintiff reiterated to Ms. Fonseca her concern about Defendant TAMBURELLI's treatment of her especially considering his history of being aggressive and unprofessional towards other female employees.

120. Ms. Fonseca brushed off Plaintiff's concerns stating, "the matter is being handled" and "this email finalizes this matter on my end."

121. Immediately after the aforementioned events and as a direct result of Plaintiff's complaints, she was retaliated and discriminated against by the Defendants.

122. While the previous issues Plaintiff experienced with the pumping accommodation persisted, Defendant TAMBURELLI escalated his mistreatment towards her by denying Plaintiff's requests for days off.

123. By way of example, Defendant TAMBURELLI approved Plaintiff's coworkers' time off requested and consistently denied Plaintiff's requested due to "staffing shortages".

124. In addition to not being able to take off to care for her sick children, Plaintiff had to work severely understaffed shifts where she didn't have the ability to take pumping breaks or a meal break, resulting in Plaintiff pumping at her desk with no privacy.

125. On or around October 25, 2021, Plaintiff submitted a grievance regarding the unfair and discriminatory denials.

126. In the complaint, Plaintiff detailed how she worked with only two other dispatchers on October 22, 2021, and October 23, 2021, because other dispatchers were allowed time off for vacation but when Plaintiff requested time off for October 13, 2021 and October 16, 2021, she was denied.

127. Defendant MCNEESE brushed off these complaints from Plaintiff's grievance and simply said that Plaintiff wasn't the only person who has time off denied.

128. As mentioned before, Plaintiff was on a pumping schedule where she must express milk every three hours.

129. To accommodate Defendants, Plaintiff edited this timeframe so she may continue working.

130. Skipping pumping breaks could lead to incredible pain and discomfort as well as medical conditions like mastitis for Plaintiff.

131. In addition to physical discomfort, skipping a pumping beak could also cause inadvertent leakage of Plaintiff's breast milk on her clothing which is incredibly embarrassing.

132. Being subjected to either of these scenarios in public, at Plaintiff's place of employment, and in front of her coworkers is extremely difficult, uncomfortable, and humiliating for Plaintiff to deal with in addition to already being physically in pain.

133. In or around November 2021, the discrimination, hostile work environment, and retaliation Defendants subjected Plaintiff to escalate even further.

134. Due to Plaintiff's complaint of being treated unfairly by Defendant TAMBURELLI twice and requested a department transfer, Defendant TAMBURELLI began unlawfully punishing Plaintiff by denying her requests for overtime pay due to "missed meals" and further preventing Plaintiff from taking pumping breaks to express her breast milk.

135. Defendant's missed meal policy is as follows; Employees of the department get paid hourly which includes a break in which an employee can take to eat a meal. If an employee isn't able to take a paid meal break, they are eligible to get paid for an additional hour of work at a time and a half rate; this is what is referred to as a "missed meal"; When an employee finds themselves in this situation, they submit an "overtime authorization form" to management requesting overtime payment for the "missed meal" and they will be paid accordingly.

136. On or around November 3, 2021 and November 4, 2021, Plaintiff was unable to take her second pumping break/meal break and was forced to pump while working at her desk once again in full view of coworkers.

137. On or around November 7, 2021, Plaintiff's department was two people short on shift.

138. At approximately 8:50 a.m. (10 minutes prior to Plaintiff's first scheduled pumping break at 9 a.m.) Plaintiff called the acting supervisor, Amanda Blue, and inquired as to

how they would handle the upcoming pumping break and said, "are you relieving me for my pumping break or are we merging the channels?"

139. Amanda said management said that Plaintiff could not take her pumping break because Defendant TAMBURELLI stated that because Plaintiff receives "missed meals' payment, Plaintiff does not qualify for coverage to pump and Plaintiff would have to "figure it out among the dispatchers on the shift".

140. Amanda further explained that Plaintiff was no longer allowed to receive pumping breaks because Plaintiff was receiving "missed meals" or if Plaintiff took a pumping break her "missed meal" request would be denied.

141. Despite receiving this information, Plaintiff proceeded to take her pumping break in the locker room as she was physically unable to skip the pumping session and could not stand to pump at her desk in view of her coworkers.

142. Plaintiff took the radio with her to monitor her channel due to the fact that she could no longer receive coverage.

143. On or about the same day, Plaintiff emailed Defendant MCNEESE, Mr. Baker, and Julio Cordero and HR to alert them of the discrimination Plaintiff was experiencing due to Defendant TAMBURELLI's orders and stated that Plaintiff's action of expressing milk is protected under New Jersey Law.

144. On or about the following day, November 8, 2021, Plaintiff received a response from only HR directing Plaintiff to fill out and submit an EEO complaint form.

145. On or about November 3, 2021, November 4, 2021, and November 7, 2021, Plaintiff filled out and submitted the overtime authorization form requesting the overtime pay that Plaintiff was rightfully entitled to for her "missed meals" from those dates.

146. On or around November 9, 2021, Plaintiff received an email from Defendant MCNEESE with her meal break overtime requests attached states, "Please see attached for NO MEAL break. Thanks".

147. Defendant TAMBURELLI, Kimberly Killroy, Defendant MCNEESE, and Roseann Manto were all CCed on the email.

148. Upon review of the attached documents, Plaintiff saw that Defendant TAMBURELLI unlawfully denied Plaintiff's overtime payment requests for "missed meals" stating the reason for denial as "Employee afforded break time".

149. Furthermore, on or around November 3, 2021, Plaintiff submitted a Civilian Request for a schedule change, requesting November 7, 2021 off.

150. On or around November 4, 2021, all Plaintiff's requests were denied.

151. Defendant TAMBURELLI oversaw and denied all Plaintiff's requests in retaliation for her many complaints against him.

152. Receiving payment for the missed meals was never a problem until after Plaintiff issued complaints against Defendant TAMBURELLI.

153. Although Plaintiff was fearful of further discrimination and retaliation, Plaintiff submitted her second formal EEO complaint via email to HR on November 11, 2021.

154. In Plaintiff's complaint, she described the discrimination and retaliation she was subjected to by Defendants in the days prior due to her gender and her complaints against Defendant TAMBURELLI.

155. After submitting the complaint, Plaintiff emailed Defendant MCNEESE and alerted him that she was denied her meal break overtime pay on November 3rd, 4th, and 7th and that Plaintiff was forced to pump at her desk or bring the radio into the locker room with her while she pumped.

156. Plaintiff stated in her email, "No other expressing mom got their missed meals denied. Why are mine?"

157. On or around November 15, 2021, Defendant MCNEESE sent an email out to the entire department regarding breast feeding mothers and receiving compensation for missed meal breaks.

158. The email explicitly discriminated against breast feeding mothers and said, "All employees are to be aware that any female employee who needs to express milk during their work hours will be permitted to do so in accordance with the policy of the City of Jersey City. All supervisors and employees are advised that the time used by employees for this purpose shall be considered to be the employee's meal or break time, or that part of. Employees should not be given an additional hour as assigned meal break, as the time used for expressing should be considered being on their meal break. **Due to the current staffing shortage employees who are being affording time to express, should not be receiving or submitted a request for overtime caused by a missed meal.**"

159. Plaintiff was outraged about this sudden change in the policy as Plaintiff is certain that her white coworker, Michelle Dilucci, was not subjected to such treatment when she was a nursing mother.

160. Furthermore, Ms. Dilucci was afforded multiple pumping breaks throughout the day (all of which she was able to take privately away from her desk) and was still able to receive compensation for her missed meals without issues.

161. On or around November 29, 2021, Plaintiff received a pretextual Notice of Minor Disciplinary Action from Defendant MCNEESE and was told she would be suspended from work for five days without pay.

162. This suspension constitutes an adverse action was yet another example of the retaliation and discrimination Plaintiff was forced to endure due to her complaints.

163. This was clear retaliation for Plaintiff's complaints of discrimination that she recently made against her employer regarding Defendant TAMBURELLI's and Defendant MCNEESE's discrimination and retaliation against her as well as for complaining about Defendant's discriminatory missed meal policy regarding breast feeding mothers.

164. A causal connection exists between Plaintiff HICKS's complaints of gender discrimination and sexual harassment and the adverse employment action she was subjected to.

165. Defendants' actions and conduct were intentional and intended to harm Plaintiff HICKS.

166. An additional adverse action occurred in or around November 2021, Plaintiff was further subjected to retaliation for her complaints and was intentionally passed over for a promotion that Plaintiff was more than qualified for.

167. Other employees, who were much less senior than Plaintiff were given the opportunity to be considered for the training position while Plaintiff was not.

168. Plaintiff inquired as to why she was not considered for the position but never received a response.

169. A causal connection exists between Plaintiff HICKS's complaints of gender discrimination and sexual harassment and the adverse employment action she was subjected to.

170. Defendants' actions and conduct were intentional and intended to harm Plaintiff HICKS.

171. Defendants unlawfully discriminated against Plaintiff by refusing to provide her with her requested reasonable and legally required accommodations.

172. Plaintiff was discriminated against because she was is a breast-feeding black woman and was subsequently retaliated against due to her complaints.

173. As a result of the discrimination, hostile work environment, and retaliation she was subjected to by Defendants, Plaintiff suffered and continues to suffer severe emotional distress.

174. As a result of the Defendants actions, Plaintiff HICKS has suffered economic loss.

175. Furthermore, Plaintiff suffered and continues to suffer lost wages due to Defendant's aforementioned conduct.

176. As Defendants conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

### **FIRST CAUSE OF ACTION**
**Discrimination Pursuant to Title VII of the Civil Rights Act and the Pregnancy Discrimination Act**

**(Only as to Defendant JERSEY CITY POLICE)**

177. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

178. By the actions described above, among others, Defendants have discriminated against Plaintiff because of her race, gender/sex and status as a nursing mother, in violation of Title VII and the PDA.

179. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
**Hostile Work Environment Pursuant to Title VII of the Civil Rights Act and the Pregnancy Discrimination Act**
**(Only as to Defendant JERSEY CITY POLICE)**

180. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

181. By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her race, gender/sex and status as a nursing mother, in violation of Title VII and the PDA.

182. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION

**Retaliation Pursuant to Title VII of the Civil Rights Act and the Pregnancy Discrimination Act
(Only as to Defendant JERSEY CITY POLICE)**

183. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

184. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, refusing to remediate the discrimination and harassment of which Plaintiff complained, forcing Plaintiff to continue working with and under the supervision of her harasser after she complained of his gender discriminatory conduct, fostering an environment in which Plaintiff's harasser continues to harass Plaintiff after and because of her complaints of harassment and discrimination, and condoning Plaintiff's harasser's continued harassment of Plaintiff in violation of Title VII for engaging in protected activity. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, forcing her to continue working with her harassers, refusing to provide her reasonable accommodations allowing her to express breast milk in a private, safe, and clean location, denying her compensated breaks provided to other employees, in violation of Title VII and the PDA for engaging in protected activity.

185. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

186. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

187.

## FOURTH CAUSE OF ACTION
### Discrimination Pursuant to New Jersey Law Against Discrimination

188. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

189. New Jersey Law Against Discrimination prohibits discrimination against an employee who chooses to express breast milk in the workplace.

190. By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by subjecting Plaintiff to sexual harassment and discriminating against Plaintiff because of her race, gender/sex and status as a nursing mother.

191. Defendants engaged in an unlawful discriminatory practice in violation of New York Executive Law by, *inter alia*, failing to provide Plaintiff a safe, clean, and private location in which to express breast milk, failing to provide reasonable accommodations for Plaintiff to express breast milk, , disparately providing compensated breaks and lunch for non-nursing employees, creating and maintaining discriminatory working conditions and a hostile work environment, discriminating against the Plaintiff because of her sex/gender and status as a nursing mother, and otherwise subjecting the Plaintiff to a hostile work environment.

192. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

193. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**FIFTH CAUSE OF ACTION**
**Hostile Work Environment Pursuant to New Jersey Law Against Discrimination**
**(As to all Defendants)**

194. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

195. New Jersey Law Against Discrimination prohibits discrimination against an employee who chooses to express breast milk in the workplace.

196. By the actions described above, among others, Defendants have failed to provide Plaintiff with reasonable break times to express breast milk and have failed to provide Plaintiff a safe, clean, and private location to express breast milk as in violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., and therefore subjected Plaintiff to a hostile work environment because of her race,  gender/sex and status as a nursing mother.

197. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

198. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## <u>SIXTH CAUSE OF ACTION</u>
### Retaliation Pursuant to New Jersey Law Against Discrimination
### (As to all Defendants)

199. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

200. By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 <u>et</u> <u>seq.</u>, by retaliating against Plaintiff for her complaint of discrimination.

201. Defendants engaged in unlawful employment practices prohibited by the New Jersey Law Against Discrimination by retaliating against Plaintiff as a result of Plaintiff's opposition to Defendants' unlawful employment practices.

202. As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

203. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## <u>SEVENTH CAUSE OF ACTION</u>
### (FLSA – Unpaid Wages)

1. Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

2. The FLSA requires covered employees, such as Defendants, to pay all employees their regular rate of pay for all hours worked. Plaintiffs were not exempt from this requirement.

3. From December 2020 through present, Defendants failed to pay Plaintiffs for all hours worked.

4. As a result of Defendants' failure to pay Plaintiff for all hours worked, Defendants violated the FLSA.

5. The foregoing conduct of Defendants constitutes willful violations of the FLSA.

6. Defendants' violations of the FLSA have significantly damaged Plaintiffs and entitle them to recover the total amount of their unpaid wages, an additional amount in liquidated damages, and attorney's fees and costs.

### EIGHTH CAUSE OF ACTION
### (FLSA – Unpaid Overtime)

7. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

8. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

9. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

10. Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon.  Plaintiff is entitled to recover from Defendants this unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages,

reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### NINETH CAUSE OF ACTION
### (NJWL – Unpaid Wages)

11. Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

12. Defendants intentionally and willfully regularly failed to pay and refused to pay Plaintiff for all hours worked, in violation of New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.7, the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, and the New Jersey Wage and Hour Regulations, N.J.A.C. § 12:56-1.2(a)6, from approximately from December 2020 through present. Defendants' willful violations entitle Plaintiffs to their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action to be determined by the court, plus interest.

### TENTH CAUSE OF ACTION
### (NJWL – Unpaid Overtime)

13. Plaintiff hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

14. Defendants intentionally and willfully failed to pay and refused to pay Plaintiff overtime wages in violation of New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 et seq., the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a4, and the New Jersey Wage and Hour Regulations, N.J.A.C. § 12:56-5.1, throughout their employment.

15. Defendants' willful violations entitle Plaintiff to the recovery of their unpaid overtime, liquidated damages, reasonable attorneys' fees and costs of the action to be determined by the court, plus interest.

### ELEVENTH CLAIM FOR RELIEF
**Failure to Provide a Reasonable Break Time and Failure to Provide a Private Location for the Expression of Breast Milk Pursuant to the Fair Labor Standards Act as amended by the Patient Protection and Affordable Care Act**

16. Plaintiff HICKS repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

17. By the actions described above, among others, Defendants have failed to provide Plaintiff with reasonable break times to express breast milk as required by Section 4207 of the PPACA, which amends Section 7 of the FLSA.

18. By the actions described above, among others, Defendants have failed to provide Plaintiff with reasonable break times to express breast milk as required By the actions described above, among others, Defendants have failed to provide Plaintiff a safe, clean, and private location to express breast milk as required by Section 4207 of the PPACA, which amends Section 7 of the FLSA.

19. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

20. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### TWELVTH CLAIM FOR RELIEF
**Retaliation Pursuant to the Fair Labor Standards Act**

21. Plaintiff HICKS repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

22. Plaintiff was an employee of Defendants within the meaning of the FLSA.

23. Defendants were employers of Plaintiff within the meaning of the FLSA.

24. 29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

25. While employed by Defendants, Plaintiff complained to Defendants about Defendants' unlawful deduction of her meal break pay when she was unable to take a meal break but used an unpaid pumping break to express breast milk and other employees were not deducted meal break pay when they were unable to take a meal break.

26. While employed by Defendants, Plaintiff further complained to Defendants about Defendants' unlawful failure to provide a private location for her to express breast milk.

27. Plaintiff's complaint constitutes a protected activity under the FLSA.

28. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, forcing her to continue working with her harassers, refusing to provide her reasonable accommodations allowing her to express breast milk in a private, safe, and clean location, denying her compensated breaks provided to other employees, in violation of the FLSA, for engaging in protected activity.

29. A causal connection exists between Plaintiff's complaint of Defendants' unlawful conduct and Defendants' retaliation of Plaintiff.

30. Defendants violated 29 U.S.C. § 215(a)(3) by retaliating against Plaintiff for Plaintiff's complaints of Defendants' unlawful conduct.

31. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

32. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

B. An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for the loss of benefits, promotions, raises and opportunities;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs and attorneys' fees pursuant to applicable law; and,

I. An award of such other relief that the Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 5, 2022
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Kayla S. Callahan*

_____
Kayla S. Callahan
45 Broadway, Suite 1420
New York, NY 10006

Telephone:  (212) 825-1400
Facsimile:  (212) 825-1440
kayla@akinlaws.com

*Counsel for Plaintiff*